# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 16-cv-2378-WJM

KELLY RENEE PARKER,

    Plaintiff,

v.

NANCY BERRYHILL,[1] Acting Commissioner of Social Security,

    Defendants.

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

    This is a social security benefits appeal under 42 U.S.C. § 405(g). Plaintiff Kelly Renee Parker ("Parker") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Parker was not disabled within the meaning of the Social Security Act. This appeal followed.

    For the reasons set forth below, the ALJ's decision denying Parker's application for disability insurance benefits is VACATED and the case is REMANDED for further proceedings consistent with this Order.

## I. BACKGROUND

    Parker was born in 1966, and was 44 years old on the alleged disability onset

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is automatically substituted for Carolyn W. Colvin as the defendant in this suit. *See* 42 U.S.C. § 405(g).

date. (Admin. Record ("R.") (ECF No. 11) at 62.) Parker completed high school and has previously worked as a disability advocate, advocacy coordinator, and mental health advocate. (R. at 76–77.)

Parker filed an application for a period of disability and disability insurance benefits on February 7, 2013, alleging that she has been disabled since June 1, 2011 due to multiple impairments, including: fibromyalgia, PTSD, depression, lupus, epilepsy, anxiety, seizures, back pain, and leg pain. (R. at 61–63.) Parker's application was initially denied and she requested an administrative hearing in front of an ALJ, which was held on February 26, 2015. (R. at 44, 77.) On March 30, 2015, the ALJ, Debra Boudreau, issued a written decision in accordance with the Commissioner's five-step sequential evaluation process. (R. at 27–39.)[2]

At step one, the ALJ found that Parker had not engaged in substantial gainful activity since the alleged onset date. (R. at 29.)

At step two, the ALJ found that Parker suffered from the following severe impairments: fibromyalgia, obesity, seizure disorder, PTSD, and depressive disorder. (*Id.*)

At step three, the ALJ found that Parker's impairments, while severe, did not meet or medically equal any of the listed impairments listed in the Social Security

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

regulations. (R. at 30.)

Before proceeding to step four, the ALJ assessed Parker's residual functional capacity ("RFC"). The ALJ concluded that Parker has the RFC to "perform a range of light work[,]" specifically:

> The claimant is able to occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to 10 pounds. She can stand and/or walk for about 6 hours in an 8-hour workday and is able to sit for 6 hours in an 8-hour workday. She is unable to climb ladders but can frequently climb stairs and balance. The claimant is able to occasionally stoop, kneel, crouch, and crawl. She should never work at unprotected heights or in close proximity to dangerous moving machinery. She cannot engage in any commercial driving. From a mental standpoint, the claimant is able to understand and remember moderately complex instructions that can be learned and mastered within three months. She is able to sustain concentration, persistence, and pace for those instructions as long as social interactions are not frequent or prolonged. In that environment, she is able to tolerate work changes that are typical of the low end of semi-skilled work; plan and set goals; tolerate supervision; and recognize and avoid work hazards.

(R. at 32.)

Next, at step four, the ALJ concluded that Parker "is unable to perform any past relevant work." (R. at 37.) Thus, the ALJ proceeded to step five and found that there was work Parker could perform in the national and regional economy, specifically, the unskilled jobs of outside deliverer (SVP-2), small parts assembler (SVP-2), and surveillance system monitor (SVP-2). (R. at 37–38.)[3]

---

[3] Specific Vocational Preparation ("SVP") is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles ("DOT"), App.C.II., 1991 WL 688702 (4th ed. 1991). The DOT lists an SVP time for each described occupation. *See* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). "Unskilled work corresponds to an SVP of 1–2; semi-skilled

Accordingly, the ALJ found that Parker was not entitled to disability insurance benefits. (R. at 39.) Parker appealed to the Social Security Appeals Council, which denied review. (R. at 1–4.) Parker then timely filed this action seeking review of the ALJ's March 30, 2015 decision. (ECF No. 1.)

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). However, the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

---

work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT." *Id*. Thus, the jobs identified by the ALJ are categorized as unskilled. (*See* R. at 38.)

## III. ANALYSIS

On appeal, Parker makes a number of arguments as to why the ALJ and Appeals Council decisions should be reversed: (1) "the ALJ failed in her duty to develop the record"; (2) "the Appeals Council erred in failing to reverse and remand to the ALJ based on the new and material evidence it was provided"; (3) "the ALJ failed to evaluate Ms. Parker's fibromyalgia as required by Social Security Ruling [("SSR")] 12-2p"; (4) "the ALJ failed to consider whether Ms. Parker's seizure disorder met or medically equaled Listings 11.02 or 11.03"; (5) "the ALJ did not base her findings regarding Ms. Parker's credibility in substantial evidence"; and (6) "the ALJ made inconsistent findings at Step 5 when she found that Ms. Parker could work as an 'outside deliverer' even though she was restricted from driving due to her seizure disorder, and failed to resolve the inconsistencies between the vocational expert's testimony and the DOT." (ECF No. 14 at 18–32.)

The Court finds Parker's second argument persuasive.[4] Social Security claimants may submit new evidence when seeking review from the Appeals Council, so long as such evidence is "new and material" and "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). The Appeals Council "will then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id*.

---

[4] Because this error alone requires remand the Court does not address the other arguments raised by Parker. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

Here, the Appeals Council specified that the treatment records from Dr. Mitchell Burnbaum, Dr. Susan Bright, Colorado West Ophthalmology Associates, St. Mary's Hospital and Regional Medical Center, Arthritis Center of Colorado, Pelvic Health Wellness Center, Grand Valley Neurology, and Delta Family Physicians qualified as new, material, and chronologically relevant evidence. (R. at 6–7.)[5] The Appeals Council further stated that these new treatment records were being made part of the record. (R. at 6.)[6]

As a result, the Appeals Council was required to consider these new treatment records as part of its "evaluat[ion of] the entire record" to determine whether to "review the case." 20 C.F.R. § 404.970(b). Thus, the Appeals Council noted that it "considered the reasons [Parker] disagrees with the [ALJ's] decision and the additional evidence" but ultimately concluded that "this information does not provide a basis for changing the [ALJ's] decision." (R. at 2.)

Parker now contends that "[t]he Commissioner acknowledges that some of the ALJ's findings regarding credibility are no longer supported in light of the new evidence submitted to the Appeals Council . . . [and that a]t least a remand is required for consideration of credibility in light of this new evidence." (ECF No. 16 at 6.) Parker further argues that the "new and material evidence was directly contradictory to the

---

[5] The Appeals Council, however, noted that it did not consider the records from Grand Valley Neurology dated May 12, 2015, and the treatment records from Dr. Bright dated July 7, 2015, because "this new information is about a later time." (R. at 2.)

[6] "Because the Appeals Council considered these new treatment records, the records are a 'part of the administrative record to be considered [by this Court] when evaluating [the ALJ's] decision for substantial evidence.'" *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006) (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).

6

ALJ's conclusions that Ms. Parker's treatment was 'sporadic,' and that she had not 'followed through' on referrals to specialists, findings that directly impacted her finding that Ms. Parker was not disabled." (ECF No. 14 at 24.)  The Commissioner responds that "[w]hile the Appeals Council evidence undercut a handful of additional factors considered by the ALJ . . . [nonetheless,] the Appeals Council evidence did not indicate changes in the period preceding the hearing that undercut any of the [ALJ's] rationales for discrediting Plaintiff's subjective claims of disabling impairments." (ECF No. 15 at 20–21.)

After considering the entire record, including the new treatment records before the Appeals Council, the Court finds that it cannot agree with the Commissioner's argument regarding the effect of the new evidence.  In the Court's view, these new treatment records undermine the ALJ's assessment of Parker's credibility, such that the ALJ's disability determination is no longer supported by substantial evidence.  (*See* R. at 33–37.)

In her March 30, 2015 decision, the ALJ stated that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 34)  However, a few of those "reasons" noted by the ALJ have now been directly contradicted by the new evidence submitted before the Appeals Council.  For example, when assessing Parker's credibility, the ALJ noted that Parker's "treatment history reflects sporadic treatment, extended treatment gaps, and subjective complaints that are not consistent with her allegations . . . [and] the record reflects a significant treatment gap since June 2013, which also suggests her pain is better-controlled than she alleges." (R. at

7

34–35.) The new evidence submitted before the Appeals Council includes treatment records dated 2014 through 2015 from Parker's primary care physician, Dr. Susan Bright; Parker's neurologist, Dr. Joel Dean; Parker's rheumatologist, Dr. Jessica Mears; Parker's ophthalmologist, Dr. Christopher Huot; and Parker's gynecologist, Dr. Mark Nishiya. (R. at 456–603.) Thus, the new evidence contradicts the ALJ's finding of an "extended treatment gap."

The ALJ also noted that Parker "has not followed through with referrals to rheumatology or physical therapy." (R. at 35.) However, the new treatment records reflect that Parker was seen by a rheumatologist, Dr. Mears, on at least four occasions in 2014. (R. at 460–484.) The ALJ further found that the "[t]reatment records do not reflect that the claimant has abnormal gait, limited range of motion, redness, or swelling of significance." (R. at 34.) However, Dr. Mears's treatment notes repeatedly reflect objective observations of swelling in all metacarpophalangeal joints, and as for range of motion in the right and left knees, Dr. Mears notes that "extension elicits pain [upon] inspection and palpation." (R. at 470, 476, 482.)

In assessing Parker's credibility the ALJ also considered the medical opinions of record, including the consultative examiner Dr. Bret Barney, who opined that Parker has minor manipulative limitations. (R. at 36, 433.) The ALJ gave Dr. Barney's opinion "some weight," noting that the "undersigned does not accept that the claimant has manipulative limitations—the record does not reflect that she has treated for, or even complained of, hand pain of significance." (R. at 36–37.) However, the treatment records from Dr. Mears notes that Parker complained of joint stiffness, weakness, and tenderness in her fingers on at least three occasions. (R. at 460, 468, 474.)

The Commissioner argues that the ALJ "provided a number of [other] good reasons grounded in record evidence for finding that [Parker's] complaints of disabling pain, depression, and anxiety were not fully disabling" . . . [and] "the majority of them remain supported by substantial evidence[.]" (ECF No. 15 at 18.) However, the Court notes that "[b]ecause a credibility assessment requires consideration of all the factors 'in combination,' when several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, we are precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support" the credibility determination. *Bakalarski v. Apfel*, 131 F.3d 151, at *3 (10th Cir. Dec. 3, 1997) (table decision) (quoting *Huston v. Bowen*, 383 F.2d 1125, 1132 (10th Cir. 1988)). Accordingly, this case must be remanded for a reevaluation of Parker's subjective complaints in light of the new evidence submitted before the Appeals Council.[7] Thus, the Court finds that the Appeals Council erred in failing to remand the matter to the ALJ for consideration of this new evidence.

---

[7] On March 28, 2016, the Commissioner issued a new SSR addressing the evaluation of symptoms in disability claims. SSR 16-3p, 81 Fed. Reg. 14166 (Mar. 28, 2016). The new Ruling supersedes SSR 96-7p by "eliminating the use of the term 'credibility' from our sub-regulatory policy . . . . In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." *Id*. at 14167. ALJ's are now instructed to consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and to evaluate whether the statements are consistent with objective medical evidence and other evidence in the record. *Id*. at 14169. In determining whether the individual's symptoms and related limitations are consistent with the evidence in his or her record, the ALJs must explain which symptoms they found consistent or inconsistent and explain how their evaluation of the individual's symptoms led to their conclusion. *Id*. at 14170. As Parker correctly notes, SSR 16-3p is now binding on all components of the Social Security Administration. (ECF 16 at 7); *See also* 20 C.F.R. § 402.35(b) ("These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted."). Accordingly, on remand, the Court orders the ALJ to assess Parker's subjective statements of her symptoms under the criteria listed under SSR 16-3p.

Further, the Court does not intend by this opinion to suggest the results that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider all of the evidence in the record and all issues raised anew on remand. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.

Dated this 3rd day of August, 2017.

BY THE COURT:

William J. Martinez
United States District Judge